# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CALVIN WALKER (#110316)** | **CIVIL ACTION** |
| **VERSUS** | |
| **JOHN SANDERS, ET AL.** | **NO. 13-0305-BAJ-RLB** |

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on July 14, 2014.

                               **RICHARD L. BOURGEOIS, JR.**
                               **UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CALVIN WALKER (#110316)**                                          **CIVIL ACTION**

**VERSUS**

**JOHN SANDERS, ET AL.**                                                  **NO. 13-0305-BAJ-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motion for Summary Judgment of defendant John Sanders (Rec. Doc. 21). This Motion is opposed.

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Capt. John Sanders and Sgt. Adams, complaining that the defendants violated his constitutional rights by subjecting him to excessive force on July 21, 2012, and by thereafter subjecting him to deliberate medical indifference.[1]

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of an Unusual Occurrence Report dated July 21, 2012 (prepared by defendant John Sanders), a certified copy of a Disciplinary Report dated July 21,

---

[1]. An attempt by the United States Marshal's Office to serve defendant "Sgt. Adams" has proven unsuccessful, specifically because service of process was not accepted on behalf of this defendant at the offices of the Louisiana Department of Public Safety and Corrections (presumably because the plaintiff failed to provide an identifying first name). *See* Rec. Doc. 6. Whereas the plaintiff propounded discovery and was thereafter provided with Sgt. Adams' first name in January, 2014, the plaintiff has taken no action to again request service in connection with this individual. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceeding. It is appropriate, therefore, that the plaintiff's claims asserted against "Sgt. Adams" be dismissed, without prejudice, for failure of the plaintiff to timely effect service upon this defendant.

2012 (prepared by defendant Sanders and charging the plaintiff with "Aggravated Disobedience"), a certified copy of a Disciplinary Report dated July 21, 2012 (prepared by Mark Laprairie and charging the plaintiff with "Defiance" and "Aggravated Disobedience"), a certified copy of excerpts from the plaintiff's medical records, a certified copy of an excerpt from the "Gas Log" pertinent to the plaintiff's dormitory (including the date July 21, 2012), and the affidavits of Capt. John Sanders, Sgt. Dwayne Adams, Capt. Mark Laprairie, Col. Russell Bordelon and Dr. Randy Lavespere.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden

of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, the plaintiff alleges that on the morning of July 21, 2012, he was escorted to the outdoor recreation yard at LSP for his one-hour exercise period. A short while later, however, Sgt. Adams approached the plaintiff and informed the plaintiff that the exercise period was being cancelled because the plaintiff had been accused of a disciplinary rule violation. Accordingly, Sgt. Adams placed the plaintiff in full restraints and began escorting the plaintiff back to his cell. The plaintiff alleges that during this escort, defendant John Sanders approached and told Sgt. Adams to maintain the plaintiff in full restraints after placing the plaintiff in his cell. According to the plaintiff, defendant Sanders then departed but returned a short while later with a can of irritant spray and proceeded to spray the plaintiff in the face without justification or provocation. Finally, the plaintiff asserts that because he is legally blind and suffers with a "degenerate [sic] eye disease," the use of irritant spray against him amounted to deliberate indifference to his serious medical needs. The plaintiff acknowledges, however, that he was allowed an opportunity to shower after the incident and was seen by a medical technician later on the same morning.

In response to the plaintiff's allegations, defendant Sanders contends in the instant motion that he is entitled to qualified immunity in connection with the plaintiff's claims.

Specifically, the defendant contends that the plaintiff's allegations and evidentiary showing fail to disclose the existence of a genuine issue of disputed fact relative to any alleged violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[2]

---

2. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court finds that the defendant's motion should be granted. Specifically, the Court finds that the plaintiff has not met his burden in opposing the defendant's motion and has not come forward with evidence sufficient to rebut the defendant's sworn assertions in connection with these claims.

First, with regard to the plaintiff's claim of excessive force, a use of force is excessive and violates the Eighth Amendment to the United States Constitution only if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malevolent action by a prison guard, however, gives rise to a federal cause of action, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986). The fact that an inmate may have sustained only minimal injury does not end the inquiry, and an inmate who is subjected to gratuitous force by guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. The extent of injury may be relevant, however, to a determination whether an alleged use of force was excessive under the circumstances, and the factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a

forceful response.  *Hudson v. McMillian, supra*, 503 U.S. at 7.

Applying the foregoing standard, the Court finds that the plaintiff has failed to overcome the defendant's assertion of qualified immunity.  Although the plaintiff alleges, in an unsworn and unsigned Complaint, that defendant Sanders instructed Sgt. Adams to maintain the plaintiff in full restraints upon placing the plaintiff in his cell on July 21, 2012, and that defendant Sanders thereafter sprayed the plaintiff in the face with a chemical agent without justification or provocation, defendant Sanders has responded to this assertion by presenting sworn affidavits attesting that on the morning of the referenced date, the plaintiff was issued a disciplinary report during his exercise period and was escorted back to his cell to pack his belongings for placement in administrative segregation.  According to defendant Sanders, the plaintiff's restraints were then removed so that the plaintiff could pack his belongings, after which defendant Sanders instructed the plaintiff to approach the bars of the cell so that the restraints could be re-applied.  The plaintiff, however, refused this directive, and it was after repeated such refusals that defendant Sanders obtained a canister of chemical spray, returned to the plaintiff's cell, and again ordered the plaintiff to approach the bars of the cell.  When the plaintiff continued to refuse, defendant Sanders sprayed a one-second burst of chemical agent into the plaintiff's cell.  Again, however, the plaintiff refused to comply with the defendant's orders, so again the defendant sprayed a one-second burst of chemical agent into the plaintiff's cell.  Finally, according to defendant Sanders, the plaintiff complied with the defendant's instructions.  The plaintiff was then escorted to administrative segregation, was allowed to shower and given a clean jumpsuit, and was seen by a medical technician who noted only redness to the plaintiff's face and mild eye irritation and instructed the plaintiff to seek further attention if needed.  *See* Rec. Doc. 21-9 at p15.  Later on the same date, the plaintiff again requested medical attention,

stating that he believed that his blood pressure was elevated and complaining that his skin and eyes were burning from the application of chemical agent earlier in the day. The notes from that consultation reflect that the plaintiff's blood pressure was not in fact elevated, and he was again advised to seek further attention if needed. *See id. at p. 14.* A review of the plaintiff's medical records does not reflect that the plaintiff made any further requests for treatment after the date of the incident. The record further reflects that the plaintiff was charged with "Aggravated Disobedience" as a result of the events of July 21, 2012, and was thereafter found guilty of this rule violation and sentenced to 10 days in disciplinary detention and to a loss of twelve (12) weeks of phone privileges. *See* Rec. Doc. 21-6. Finally, the defendant attests that the amount of force utilized against the plaintiff on the referenced date was only such as was reasonable and necessary "to gain offender Walker's compliance in obeying ... direct verbal orders." *See* Rec. Doc. 21-3.

In response to the foregoing, the plaintiff has presented neither documentary evidence nor his own sworn statement to contravene the facts stated in the defendant's motion, much less evidence sufficient to meet his burden of proof, to rebut the defendant's assertion of qualified immunity, and to show the existence of a genuine disputed fact regarding whether defendant Sanders in fact utilized unreasonable or constitutionally excessive force on the date in question. *See Gates v. Texas Department of Protective and Regulatory Services, supra*, 537 F.3d at 419 (recognizing that the plaintiff bears the burden of rebutting a defendant's assertion of qualified immunity on motion for summary judgment). Specifically, the plaintiff has offered nothing to refute the defendant's sworn assertions or his evidentiary showing which reflect that the plaintiff engaged in conduct on July 21, 2012, which justified some use of force on that date. Whereas the plaintiff asserted in his Complaint that defendant Sanders utilized a chemical agent against

him without provocation, the plaintiff's Complaint is unsworn and unsigned (as is his opposition to the defendant's motion, *see* Rec. Doc. 22), and as a result, his factual allegations contained therein are not properly subject to consideration by the Court on motion for summary judgment. In the context of a Motion for Summary Judgment, it is well-settled that a plaintiff may not rest upon mere allegations or assertions contained in unsworn pleadings in opposing a properly supported motion. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 324. In response to such a motion, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* Stated another way, in order to meet his burden of proof, the party opposing a motion for summary judgment "may not sit on its hands, complacently relying" on conclusory assertions contained in unsworn pleadings. *Weyant v. Acceptance Insurance Co.*, 917 F.2d 209, 212 (5th Cir. 1990). In the instant case, despite notice and an opportunity to appear, the plaintiff has not come forward with any competent evidence to refute the affidavits and documentary evidence provided by the defendant in support of the Motion for Summary Judgment. What has been brought to the Court's attention for consideration is competent evidence adduced by the defendant, supported by affidavits and documentation, which reflects that the use of force against the plaintiff on July 21, 2012, was not for the sole purpose of maliciously and sadistically causing the plaintiff harm but, instead, was for the purpose of restoring order and maintaining control in response to an inmate who was refusing to obey the orders of a security officer. Based upon the foregoing and upon the plaintiff's failure in this case to designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, and failure to provide supporting evidence on his own behalf, the Court concludes that the defendant's Motion is well-taken and that, on the record

before the Court, the defendant is entitled to summary judgment as a matter of law.

The same result follows in connection with the plaintiff's claim of deliberate medical indifference. Specifically, defendant Sanders attests in his affidavit that he "was not and [is] not aware of any restriction prohibiting the use of chemical agent on offender Walker" at LSP. *See* Rec. Doc. 21-3. That assertion is also mirrored in the affidavit of Dr. Randy Lavespere, who asserts that "[t]here is no restriction providing that offender Walker cannot have chemical agent used on him [and] Offender Walker's eye condition does not warrant any such restriction." *See* Rec. Doc. 21-12. In order for there to be liability in connection with a claim of deliberate medical indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985). In the instant case, in the absence of any evidence to refute the defendant's sworn assertions that he was not personally aware of a substantial risk of serious harm to the plaintiff upon the use of a brief application of chemical spray to obtain the plaintiff's compliance, there can be no finding of deliberate indifference on the part of the defendant in connection with this claim. Further, the defendant's unrefuted evidence reflects that only a small amount of chemical agent was in fact utilized against the plaintiff on July 21, 2012, and that the plaintiff suffered only minor discomfort which did not persist for an appreciable period of time.

Accordingly, this claim, as well, is subject to dismissal.[3]

## RECOMMENDATION

It is recommended that the plaintiff's claims asserted against defendant "Sgt. Adams" be dismissed, without prejudice, for failure of the plaintiff to serve this defendant within 120 days as mandated by Rule 4(m) of the Federal Rules of Civil Procedure. It is further recommended that the Motion for Summary Judgment of the remaining defendant (Rec. Doc. 21) be granted, dismissing the plaintiff's claims, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on July 14, 2014.

                                             **RICHARD L. BOURGEOIS, JR.**
                                             **UNITED STATES MAGISTRATE JUDGE**

---

3. The plaintiff's Complaint also includes a claim that the defendant's action in utilizing chemical spray on the morning of July 21, 2012, amounted to punishment of the plaintiff for a previous rule violation without constitutional due process in the form of a disciplinary hearing or finding of guilt. However, considering the Court's finding in this case that the evidence supports a finding that the defendant's use of chemical spray against the plaintiff was motivated, instead, by the plaintiff's repeated refusal to obey the defendant's orders, the Court need not give serious consideration to this claim.